**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Pablo J.Q.M.,

        Petitioner,

v.

Markwayne Mullin, *Secretary, U.S. Department of Homeland Security, in his official capacity*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement; Immigration and Customs Enforcement, in his official capacity*; David Easterwood, *Field Office Director of Enforcement and Removal Operations, Minneapolis – St. Paul Field Office, Immigration and Customs Enforcement, in his official capacity*; and Ryan Shea, *Sheriff of Freeborn County, Minnesota, custodian of detainees at the Freeborn County Jail, in his official capacity*,

        Respondents.

Civ. No. 26-2302 (JWB/DLM)

**ORDER ON**
**PETITION FOR WRIT OF**
**HABEAS CORPUS**

Karen Venice Bryan, Esq., KB Law PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Ebony Nicole Thomas, Esq., United States Attorney's Office, counsel for federal Respondents.

David John Walker, Esq., Freeborn County Attorney's Office, counsel for Respondent Ryan Shea.

Petitioner Pablo J.Q.M. is a noncitizen who entered the United States on September 20, 2022, pursuant to a grant of humanitarian parole. Years after that parole expired, Petitioner was arrested within the United States and detained by immigration

authorities without an opportunity to seek release on bond. This case presents a narrow question: whether a noncitizen in Petitioner's posture—treated by statute as an applicant for admission—may be held without any individualized determination of flight risk or danger to the community without violating the Due Process Clause.

The governing statute permits detention for noncitizens classified as applicants for admission. But a statutory grant of executive authority does not answer the constitutional question. What process the Constitution requires once the government deprives a person of liberty is a separate inquiry. That inquiry is central here.

## BACKGROUND

Petitioner is a citizen of Nicaragua. (Doc. No. 2, Petition ¶¶ 1, 17, 29.) He entered the United States on humanitarian parole in September 2022. (*Id.* ¶¶ 1, 29; *see also* Petition, Ex. A.) That parole expired on November 22, 2022. (Petition, Ex. A at 3.) Petitioner was not served with a Notice to Appear at entry. (Doc. No. 10, Santiago Decl., Ex. B at 2.)[1]

Petitioner has been a resident of Minnesota for nearly three years. (Petition ¶ 3.) He is married and is a derivative applicant on his spouse's asylum application, which was timely filed with United States Citizenship and Immigration Services ("USCIS") on August 7, 2023. (*Id.* ¶¶ 2, 30; Petition, Ex. B.) Petitioner has a valid work permit, has

---

[1]    Petitioner moves to strike portions of Deportation Officer Jonathan Santiago's Declaration (Doc. No. 10) as inadmissible hearsay, arguing that the officer lacks personal knowledge of Petitioner's initial arrest and subsequent transfers. (Doc. No. 11 at 13–15.) Because this Order's factual findings rely on undisputed allegations in the Petition and undisputed portions of the record, rather than on contested testimonial assertions, the request to strike is denied as moot.

never violated any conditions imposed by immigration authorities, and has no criminal history. (Petition ¶¶ 31–32; Petition, Ex. D at 1; Santiago Decl., Ex. B at 2.)

On January 7, 2026, Immigration and Customs Enforcement ("ICE") approached Petitioner, asked what country he was a citizen of, and upon hearing "Nicaragua," arrested him. (Santiago Decl., Ex. B at 3.) The officers asked no questions about Petitioner's longstanding residence in Minnesota, his pending asylum application, his family ties, or his employment. (*Id.*) ICE then transferred Petitioner to a detention facility in El Paso, Texas. (*Id.* at 2.)

On January 30, 2026, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear which commenced removal proceedings and charged Petitioner with being present in the United States without admission or parole. (Petition ¶ 5; Petition, Ex. C at 1; Santiago Decl., Ex. C.) Petitioner was then transferred to the Freeborn Adult Detention Center in Albert Lea, Minnesota where he remains in custody. (Petition ¶¶ 8, 17, 33, 35.) On May 15, 2026, an Immigration Judge granted Petitioner's request for asylum but declined to rule on his request to withhold removal. (*See* Doc. Nos. 12, 12-1.)

DISCUSSION

I.      **Legal Standard**

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. See *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn.

3

2025) (collecting cases).

Petitioner argues that his detention is unlawful because it violates the Due Process Clause of the Fifth Amendment. He also asserts that Respondents violated his Fourth Amendment rights against unreasonable searches and seizures and violated the APA.

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II.    Analysis

### A.    Fifth Amendment Due Process

#### 1.    Statutory Detention Authority

Respondents assert that Petitioner is an applicant for admission and must be detained without a bond hearing under 8 U.S.C. § 1225(b)(2)(A).

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." See 8 U.S.C. § 1225(a). Section 1225(b)(2) provides that applicants for admission, if "seeking admission" to the United States and not "clearly and beyond a doubt entitled to be admitted," "shall be detained" for a removal proceeding. 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2) does not mention a bond hearing. *See Jennings*, 138 S. Ct. at 842, 851.

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila v. Bondi*, 170 F.4th 1128, 1134–36 (8th Cir. 2026). Accordingly, in the Eighth Circuit, any noncitizen present in the United States who has not been lawfully admitted, regardless of whether they are arriving at the border or living in the interior, are subject to mandatory detention under § 1225(b)(2)(A). And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond hearings and finding that periodic bond hearings are not required under a statutory construction analysis).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully admitted, is deemed to be an applicant for admission and subject to mandatory detention without bond, regardless of how far from the border he was apprehended or how long he had been living inside the country.

That is an accurate recitation of § 1225(b)(2)'s meaning under *Avila*. That point, however, means only that Petitioner's detention does not represent a *statutory* violation based on the detention provision in 8 U.S.C. § 1225(b)(2). It says nothing about whether Petitioner's detention comports with constitutional due process.

Here, Petitioner's physical presence in the United States requires consideration of due process protections—he is a person in the country who has been detained. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment

entitles [noncitizens] to due process of law in deportation proceedings."). Even accepting that § 1225(b)(2) mandates detention under *Avila*, the question of whether the Constitution requires additional process under the circumstances must still be considered.

### 2.    Constitutional Protections

Under *Avila*, a noncitizen who has not been lawfully admitted may be treated as an applicant for admission and detained without bond under 8 U.S.C. § 1225(b)(2)(A). 170 F.4th at 1134–38. But *Avila* addressed statutory detention authority, not whether detention imposed through that authority may violate constitutional due process under particular circumstances. Petitioner therefore may still pursue the constitutional claim presented here. *See Jennings,* 138 S. Ct. at 851 (2018) (interpreting § 1225(b) as not requiring bond hearings as a matter of statutory construction).

The question thus is whether detention imposed through that authority, under the circumstances presented here, comports with the Due Process Clause.

It does not.

The Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present in the United States, including noncitizens, regardless of the legality of their presence. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Civil detention, while permissible in certain contexts, must be reasonably related to its purpose and justified in the particular case. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Whether civil detention satisfies due process turns on the private liberty interest at stake, the risk of erroneous deprivation absent additional safeguards, and the

6

government's interest in continued detention. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). That framework guides the analysis here.

Respondents contend that no additional process is required because Petitioner is treated as an applicant for admission under § 1225(b)(2)(A). Under *Avila*, that classification is correct as a matter of statutory law, even for a noncitizen apprehended within the interior of the United States. But that conclusion does not resolve the constitutional inquiry. *Avila* addresses the scope of statutory detention authority; it does not determine what process the Constitution requires when that detention authority is exercised.

Due process does not turn on statutory classifications alone, such as treating a noncitizen as an applicant for admission. It depends on the nature of the deprivation and the circumstances in which it is imposed.

Those circumstances are significant here. Petitioner was not apprehended at the border or while attempting to enter the country. He was arrested within the United States, where he has lived for years. He has established community ties, lives with his spouse, and holds an active work permit. As of May 15, 2026, Petitioner now has been granted asylum. His detention therefore implicates a substantial liberty interest, given his years-long presence in the United States and recent grant of asylum.

At the same time, Respondents have made no individualized determination that Petitioner poses a risk of flight or a danger to the community. His detention rests solely on treating him as an applicant for admission, without any mechanism for review. In that posture, the risk of erroneous liberty deprivation is substantial because there is no process

to test whether detention is justified in this particular case.

The government's interests in ensuring attendance at removal proceedings and protecting the public warrant substantial weight. But those interests are not undermined by requiring a minimal procedural safeguard such as a bond hearing. A bond hearing does not mandate release. It requires only that the government justify continued detention to a neutral decisionmaker. The administrative burden of such a hearing is modest, particularly when measured against the significant liberty interest at stake.

Under the circumstances presented here, detention is not self-justifying. Petitioner was arrested within the United States, has lived here for years, and has received no individualized assessment of the basis for his detention. Continued detention without any process is therefore constitutionally insufficient. Due process requires a meaningful opportunity to test the justification for continuing detention.

Accordingly, Petitioner's continued detention—without any opportunity for an individualized determination—violates the Due Process Clause.

**B.    Fourth Amendment and Warrantless Arrests**

Petitioner also raises Fourth Amendment and related statutory concerns arising from the circumstances of his warrantless arrest. The present record raises questions concerning the sequence of the arrest, records checks, warrant issuance, and initiation of removal proceedings, including whether the requirements of 8 U.S.C. § 1357(a)(2) were satisfied. *See United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Those questions need not be resolved here because Petitioner's continued detention without any meaningful opportunity for individualized custody review independently violates due

8

process for the reasons discussed above.

**Remedy**

The appropriate remedy is a prompt bond hearing.

Petitioner's detention is unconstitutional because it has been imposed without any individualized determination that continued detention is necessary. The Constitution requires a process sufficient to test the justification for continued detention. A bond hearing provides that process.

At that hearing, the government must justify continued detention based on an individualized assessment of flight risk or danger to the community. Continued detention may not rest solely on Petitioner's classification as an applicant for admission.

Respondents will therefore be ordered to provide Petitioner with a bond hearing before an Immigration Judge within seven days of this Order. If such a hearing is not provided within that time, Petitioner must be released.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.    Petitioner Pablo J.Q.M.'s Petition for Writ of Habeas Corpus (Doc. No. 2) is **GRANTED IN PART**.

2.    Petitioner's continued detention without any opportunity for an individualized bond determination violates the Due Process Clause.

3.    Respondents must provide Petitioner with a bond hearing before an Immigration Judge in Minnesota within **7 days** of the date of this Order.

4.     Respondents, or anyone acting in concert with Respondents, are

**ENJOINED** from removing, transferring, or otherwise facilitating the removal of

Petitioner from the District of Minnesota before the bond hearing and related ruling

required by this Order have occurred.

5.     If Respondents do not provide Petitioner with a bond hearing as required by

this Order, Petitioner must then be **immediately released from detention**.

6.     If Petitioner is released:

a. **Release and Return of Property.** In the event that Respondents release
   Petitioner, he must be released in Minnesota. At the time of Petitioner's
   release, Respondents shall return to Petitioner all personal property in
   Respondents' custody or control, including but not limited to, passports,
   identity papers or licenses, immigration records, prescribed medications,
   and treatment-related equipment. Release may not be delayed for any
   reason related to the retrieval, processing, or return of such property.
   Any delay or failure to effectuate release in accordance with this
   paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota,
   Respondents shall initiate Petitioner's return to Minnesota for the sole
   purpose of effectuating release. Respondents shall not delay initiating
   Petitioner's return based on administrative convenience, transportation
   availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at
   the time of release, Respondents may delay physical release only for the
   brief period necessary to ensure safe release. Any such delay must be
   strictly limited and may not be used to justify continued custody where
   a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents may not
   administratively recharacterize the release granted by this Order as
   grounds to impose conditions or re-impose existing conditions in
   conjunction with release (including release on recognizance or similar
   instruments), without prior notice to and authorization from the Court,
   or absent a new and independently lawful custody decision properly
   executed under the law. For the avoidance of doubt, Respondents'

compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

7. **Notice.** On or before **June 5, 2026**, Respondents shall file a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. If released, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

8. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: May 26, 2026                        *s/ Jerry W. Blackwell*
Time: 2:17 p.m.                           JERRY W. BLACKWELL
                                          United States District Judge

11